UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PHILLIP O'NEIL, )
 )
    Petitioner, )
 ) Case No. 03-cv-838-JPG
v. )
 )
GERARDO ACEVEDO, )
 )
    Respondent. )

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on the mandate of the United States Court of Appeals for the Seventh Circuit (Doc. 46) remanding this case for further proceedings regarding petitioner Phillip O'Neil's ("O'Neil") petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (Doc. 1). The Court decided the issues in this case, then vacated its judgment to reconsider a single claim: that O'Neil's trial counsel was constitutionally ineffective for failing to call him as a witness to testify in his own defense in his criminal case. The parties have briefed this issue (Docs. 51, 53, 54 & 54), and the Court now renders its decision.

**I.    Background**

In 1994, O'Neil was convicted of first degree murder in an Illinois court. He was sentenced to serve thirty years in prison.

At trial, the state presented evidence that on May 23, 1994, Michael Adams ("Adams") had been arguing with O'Neil inside the apartment of Adams's girlfriend. Adams left the apartment to talk to a friend in a van and returned a short while later. Witnesses testified that when Adams returned, O'Neil called out to him and Adams approached O'Neil. O'Neil then fired a shot that missed Adams. Adams then threw up his hands and began walking away from O'Neil, at which time O'Neil shot Adams in the chest. Adams fell and O'Neil approached him

and shot him several more times. Adams died of multiple gunshot wounds.

At trial, O'Neil's counsel made an oblique reference to self-defense[1] in his opening statement but did not press that theory of defense, did not request a self-defense jury instruction and instead argued to the jury, based on the different sizes of Adams's multiple gunshot wounds, that Adams was actually killed by a second shooter, not O'Neil. That argument was apparently unsuccessful.

In a *pro se* post-trial motion, O'Neil argued that his counsel had prevented him from testifying at trial. The Illinois Circuit Court held a hearing on the motion at which O'Neil and his counsel both testified that counsel had advised O'Neil not to testify, and that O'Neil had taken his advice. Counsel testified he gave this advice in part because if O'Neil testified, the prosecution would likely introduce a statement O'Neil had given law enforcement officers several days after the shooting. In that statement, O'Neil said that on the day of the shooting Adams had threatened him but he hadn't taken it seriously. He also stated he had seen Adams reach for a bulge in Adams's shirt before O'Neil fired his first shot. He stated that he saw he had hit Adams with his second shot, that he thought if he did not kill Adams, Adams would come back and get him, and that he continued to shoot Adams several more times as he fell to the ground. Counsel thought O'Neil would be harmed by his admission that he made a conscious decision to kill Adams when he decided to continue shooting even after Adams had been shot and was trying to get away. Counsel believed the value of O'Neil's testimony toward a self-defense argument would be outweighed by the damage done by O'Neil's statement negating the

---

1   Under Illinois law, the use of deadly force is justified "only if [the defendant] reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a).

imminence of danger prior to the shooting and confirming the conscious decision to kill Adams. Counsel also took into consideration that there were no witnesses who saw Adams with a weapon, and that some witnesses could testify O'Neil announced he was going to harm Adams even before their encounter. Counsel testified that he left the final decision whether to testify up to O'Neil, who chose not to. The Court found counsel's testimony credible and found that his performance was not incompetent.

On the direct appeal, the Illinois Appellate Court affirmed the conviction, finding that counsel was not deficient and that O'Neil suffered no prejudice from his failing to advance a self-defense argument because of the overwhelming evidence of O'Neil's guilt and because self-defense was not a viable defense. The Illinois Supreme Court denied O'Neil leave to appeal the Appellate Court's order.

O'Neil then raised his ineffective assistance of counsel arguments in a state post-conviction petition. The Illinois Circuit Court held a hearing on the petition at which O'Neil and his trial counsel again testified regarding O'Neil's failure to testify at the criminal trial. O'Neil testified that his counsel had advised him not to testify because the jury would not believe a self-defense argument based solely on O'Neil's testimony in light of the other evidence and O'Neil's statement. This time, however, O'Neil testified that he persisted in asking his attorney to let him testify even though it was contrary to his advice. Counsel's testimony was consistent with his earlier testimony that O'Neil made the decision not to testify after counsel's advice. The court was disturbed by a lack of a record of O'Neil's decision regarding the decision not to testify. Nevertheless, it denied the post-conviction petition, stating:

> It is clear that Defendant Phillip O'Neil was never afforded the right to testify at his own trial or present certain witnesses on his behalf due to his attorney's failure in this matter. The record is silent as to Defendant's desire to

waive his Fifth Amendment protection and testify in this case, and the trial attorney of record's testimony regarding the same is very disturbing to the Court.

In essence, Defendant never conceded that he shot the victim in the case, but his whole defense strategy was based on some form of self-defense. Due to his trial attorney's representation, this was never presented to any jury for consideration.

Also, it is clear that the issue of Ineffective Assistance of Counsel has never been fully addressed on the merits by the Appellate Court. However, certain facets have been referred to regarding Ineffective Assistance of Counsel, in particular, the failure to call certain witnesses.

In light of the Appellate Court's Rule 23 Order, and the language contained therein, as well as the initial trial court's Order, this Court cannot award Defendant a new trial, and, thus, the Petition for Post-Conviction Relief is denied.

The Illinois Appellate Court affirmed the decision denying the post-conviction petition but misstated the Circuit Court's reason for that denial. It justified the affirmance, however, on the *res judicata* effect of its decision on O'Neil's direct appeal finding defense counsel was not deficient and O'Neil suffered no prejudice.

Undaunted, O'Neil raised his ineffective assistance of counsel argument again in this § 2254 action. The Court rejected a number of his arguments but, in light of the Circuit Court's puzzling order on the post-conviction petition, agreed to reconsider its decision on the issue of whether trial counsel was ineffective for failing to call O'Neil to testify in his own defense. In its reconsideration, the Court has considered transcripts presented for the first time after the Court's original decision and finds that they confirm the Court's original decision to deny O'Neil's § 2254 petition was correct.[2]

## II.  Analysis

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions,

---

2   The respondent asks the Court to disregard issues raised by the petitioner that have already been decided in the Court's earlier orders. However, because O'Neil's argument regarding his right to testify is intertwined with some of those arguments, the Court will touch on them as needed to explain its current decision.

the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970).

The issue of whether O'Neil's counsel was constitutionally ineffective for failing to call him to testify in his own defense – and for other alleged deficiencies – was decided on the merits by the Illinois Appellate Court on the direct appeal of O'Neil's criminal conviction. Later courts relied on the *res judicata* effect of that decision and did not address the merits of O'Neil's claim. Since the Illinois Appellate Court's decision on direct appeal was the last state court to address O'Neil's claim on the merits, the Court will assess that opinion. *See Franklin v. Sims*, 538 F.3d 661, 664 (7th Cir. 2008), *cert. denied*, 77 U.S.L.W. 3396 (U.S. Jan. 12, 2009).

With respect to claims adjudicated on the merits in state court, a federal court can grant a writ of *habeas corpus* only if the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This standard is highly deferential to the applicable state court decision. *Franklin*, 538 F.3d at 664. A decision is "contrary to" clearly established Supreme Court law if the state court (1) applies a rule that contradicts the governing law as determined by the Supreme Court or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see Ouska v. Cahill-Masching*, 246 F.3d 1036, 1044 (7th Cir. 2001). A decision is an "unreasonable application of" clearly established Supreme Court law if the state court applies the proper law to the facts of a criminal defendant's case in an objectively unreasonable manner. *Williams*, 529 U.S. at 407; *Ouska*, 246 F.3d at 1044. An *unreasonable* application is different than an *incorrect* or *erroneous* application of federal law. *Williams*, 529

5

U.S. at 410; *Roche v. Davis*, 291 F.3d 473, 481 (7th Cir. 2002). As long as the state court acted reasonably, this Court is not permitted to substitute its own independent judgment as to the outcome. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

All parties concede that the Illinois courts identified the correct legal standard – *Strickland v. Washington*, 466 U.S. 668 (1984) – when deciding O'Neil's ineffective assistance of counsel claims. Under *Strickland*, a party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a

6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

O'Neil believes the Illinois Appellate Courts applied *Strickland* in an objectively unreasonable manner. To the contrary, that court's decision on O'Neil's direct appeal was objectively reasonable. The decision considered the factual finding of the Circuit Court following the post-trial motion hearing that O'Neil himself made the decision not to testify. Since this factual finding has not been rebutted by clear and convincing evidence, the Court presumes it is correct. *See Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005).

O'Neil argues that his decision not to testify was not voluntary because it was based on counsel's deficient assessment of the case and erroneous advice that he should not testify in support of a self-defense argument. However, the Illinois Appellate Court found that O'Neil's counsel's performance was not deficient and did not cause him any prejudice. The Appellate Court reviewed the transcript of the post-trial motion hearing where the ineffective assistance of counsel issue was presented and where counsel set forth his reasons for declining to pursue a self-defense argument and the related decision to advise O'Neil not to testify in support of such a defense.

In light of the hearing testimony and the Circuit Court's findings, the Appellate Court's decision was objectively reasonable. While it is true that a self-defense argument was not legally impossible to prove using O'Neil's testimony, in counsel's experience and judgment it was highly unlikely to succeed, and less likely to succeed than a "second shooter" defense. While O'Neil was prepared to testify that he was ably frightened Adams might shoot him,

7

witnesses testified that O'Neil was the aggressor and that he pursued and shot Adams after any imminent threat O'Neil might have felt from Adams had dissipated. Furthermore, the admission of O'Neil's statement evidencing a deliberate decision to kill Adams to prevent him from coming back and "getting" O'Neil in the future would likely have been fatal to a self-defense argument – even an imperfect self-defense argument[3] – and would have supported the murder charge. Counsel's decision to pursue instead a "second shooter" defense based on some evidence – the differing sizes of the bullet wounds – was not outside the realm of competent counsel. The evidence forced counsel to choose between two unlikely defenses, and he cannot be faulted for making a choice and advising his client about testifying accordingly.[4] The Illinois Appellate Court did not unreasonably apply *Strickland* in so finding.

The Illinois Appellate Court also reasonably applied *Strickland*'s prejudice prong in finding that overwhelming evidence supported the state's murder charge and that pursuing a self-defense argument – supported only by O'Neil's testimony – had no reasonable probability of changing the outcome of the case. The Appellate Court noted that no witness ever saw Adams with a gun or any other weapon, which does not legally negate but certainly casts doubt on the reasonableness of O'Neil's belief he was in imminent danger from Adams before the shooting. Also, numerous witnesses saw Adams retreat with his hands in the air, not reaching for a weapon, when O'Neil fired the first shot that hit Adams and then continued to pursue and shoot

---

3    Imperfect self-defense is available to one who uses force by an honest but unreasonable mistake that such force is justified.

4    O'Neil argues that the presentation of a "second shooter" defense prompted the addition of aiding and abetting charges, which actually increased the likelihood of a murder conviction. However, in the absence of evidence tying O'Neil to the second shooter, the Court is unconvinced that the "second shooter" defense was detrimental to O'Neil's case.

him multiple times even after he had fallen down. The Appellate Court reasonably found that even had O'Neil testified in support of a self-defense argument, such an argument was not viable in light of the other evidence

The Court notes that the Circuit Court's order denying O'Neil's post-conviction petition originally gave the Court pause because it implied in dicta that O'Neil had not been afforded his constitutional rights. However, after careful review of the transcripts upon which that decision and the Appellate Court's direct appeal decision were based, the Court is convinced that the Appellate Court's direct appeal decision was reasonable *and* correct.[5]

### III. Conclusion

For these reasons, the Court **DENIES** O'Neil's petition for a writ of *habeas corpus* (Doc. 1) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: February 19, 2009**

s/ J. Phil Gilbert
**The Honorable J. Phil Gilbert, District Judge**

---

5   The Court need not address O'Neil's argument that counsel's failure to follow up on his oblique reference to self-defense in his opening statement damaged O'Neil's credibility. Counsel never promised O'Neil would testify, and O'Neil's credibility was never at issue since he did not testify.

9